UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

Vladimir M. Gorokhovsky,　　　　　　　　Case No. 17-28901-beh

　　　　Debtor.　　　　　　　　　　　　　Chapter 7

**MEMORANDUM DECISION ON THE UNITED STATES'
MOTION FOR RELIEF FROM STAY**

　　　　The United States moved for relief from the automatic stay to perfect its secured interest in the debtor's real property—an interest that already is perfected and fully enforceable against the debtor himself—against certain third parties. Essentially, the United States wants to prevent the debtor from transferring any of his three real properties to a *bona fide* purchaser, free and clear of the United States' federal tax liens.

　　　　The debtor, a lawyer who is *pro se* in this case, objected to the motion. His response brief fails to counter any of the United States' arguments. Instead, either ignoring or misapprehending the nature of his case and the United States' request, the debtor offers a number of defenses ill-suited to a chapter 7 liquidation case, or to a request to perfect a statutory lien.

　　　　The court held a hearing on the motion on March 14, 2018. After a full consideration of the circumstances, the court granted the United States' request for relief from the stay, for the reasons stated on the record. This decision supplements the court's earlier ruling.

## JURISDICTION

　　　　The court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered pursuant to 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The following constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## FACTUAL BACKGROUND

The debtor, Mr. Gorokhovsky, owns three real properties, none of which are titled in his name:

- A house at 10919 N. Hedgewood Lane in Mequon, Wisconsin (located in Ozaukee County), which is the debtor's principal residence. The house is titled in the name of the debtor's ex-wife, but he was awarded the property in the parties' divorce in 2011.

- A condominium at 451 Huron Street #1402, in Chicago, Illinois (located in Cook County). The condo is titled in the name of the debtor's ex-wife, but he was awarded the property in the parties' divorce in 2011.

- A condominium at 4275 W. Cherrywood Lane, in Brown Deer, Wisconsin (located in Milwaukee County). This property is titled in the name of a defunct LLC owned by the debtor.

Mr. Gorokhovsky also owes substantial tax debts to the IRS. According to the United States, his federal income tax debt as of January 15, 2018 totaled $463,962.65. CM-ECF, Doc. No. 33, at 2. This debt includes liability for the 2003, 2004, and 2006 through 2015 tax years.[1] By virtue of this debt, the United States holds statutory liens against all real and personal property belonging to the debtor.[2] The IRS filed notices of its liens in Ozaukee County, Wisconsin, against the debtor for the tax years above, in the total amount of $371,754. *See* CM-ECF, Doc. No. 33-1. The IRS has not filed any notices of its tax liens in Cook County or Milwaukee County, or any notices against the titled owners of the three properties listed above, as nominees for the debtor.

Mr. Gorokhovsky does not contest that the IRS holds a statutory lien against his real and personal property. His schedules estimate that the IRS has a secured claim of $500,000. CM-ECF, Doc. No. 31, at 23. Nor does he contest that he owns the three real properties, which he lists on Schedule A at a combined value of $566,000. *Id.*, at 3–4. Mr. Gorokhovsky has scheduled

---

[1] Mr. Gorokhovsky has filed an adversary proceeding seeking a determination that the debts owed to the IRS for tax years 2003, 2004, and 2006 through 2014 are dischargeable, Adv. No. 17-02376-beh. The United States has responded, denying that the debts are subject to discharge. The court has yet to make any rulings on the merits in that proceeding.

[2] *See* 26 U.S.C. § 6321, discussed below.

secured claims against these properties totaling $748,528 (including a $500,000 debt to the IRS, and a purported lien held by the Wisconsin Department of Revenue in the amount of $98,000). *Id.*, at 23–24 and 7. He has twice amended his schedules, and in doing so, has never asserted that the value of the properties exceeds the encumbrances against them—in other words, that he has any equity in the properties.[3]

The chapter 7 trustee abandoned the three properties, not because of exemptions, security interests or liens, but because the properties are burdensome and of inconsequential value to the estate. *See* CM-ECF, Doc. No. 28.[4] The trustee has valued the properties, and identified their corresponding liens, as follows:

| **Property** | **Value** | **Liens (other than tax liens)** |
| --- | --- | --- |
| House in Mequon | $250,000 | $70,356 mortgage |
| Condo in Chicago | $316,000 | $30,000 for unpaid maintenance fees $186,598 mortgage |
| Condo in Brown Deer | $56,000 | |
| **Total** | **$622,000** | **$286,954** |

Based on the trustee's numbers, the equity in the properties before the attachment of any tax liens is $335,046. According to the trustee, the amount of secured claims held by the taxing authorities significantly exceeds that amount: $430,000. CM-ECF, Doc. No. 28.

---

[3] Although the debtor's original schedules valued the properties at $585,000 (CM-ECF, Doc. No 19, at 3–4) and the liens against them at $534,567.80 (*id.*, at 15–16), the debtor originally did not schedule the mortgages on either the Mequon or the Chicago property, which the trustee calculates total over $250,000 (CM-ECF, Doc. No. 28, at 3), and the debtor later calculated at $90,856 (CM-ECF, Doc. No. 33, at 7, 24).

[4] In his notice of proposed abandonment, the trustee explained: "Any possible equity in real estate would be eaten up by tax obligations. . . . It appears that there is no money available that would benefit unsecured creditors. In addition, substantial expense would have to be undertaken to have [the] real estate placed in [the] debtor's name, to avoid judgements, to cover insurance, to cover utilities, to cover securing the property and to cover the costs of sale." *Id.*, at 4. The trustee abandoned the properties shortly before the March 14 hearing on this motion, CM-ECF, Doc. No. 47.

Although the IRS's liens are perfected against the debtor himself, they are not perfected against certain third parties (those listed in 26 U.S.C. § 6323(a)). As a result, the United States moved for relief from the automatic stay to perfect its interest against those third parties by filing notices of its federal tax liens against the titled owners of the three properties, as the debtor's nominees, in Cook County, Milwaukee County, and Ozaukee County (as well as the debtor, in Cook County and Milwaukee County). The United States further seeks to pursue *in rem* collection of the debtor's real property by taking legal action, including filing a civil suit to enforce its federal tax liens under 26 U.S.C. § 7403. The United States argues that relief from the stay is warranted under both 11 U.S.C. §§ 362(d)(1) and (d)(2), because a balancing of the harms weighs in favor of the United States, and because the debtor lacks equity in the properties, which are not necessary to an effective reorganization.

In response, the debtor relies largely on inapt legal principles and arguments that involve (1) reorganization, rather than liquidation, cases, and (2) attempts by unsecured creditors to liquidate their claims in state court. The debtor also maintains that granting the United States' motion will negate his pending adversary proceeding, and that the United States' motion is untimely because the IRS should have filed notices of its tax liens years ago. These assertions are unpersuasive. For the reasons that follow, the court finds that the United States is entitled to relief under both §§ 362(d)(1) and (d)(2).

## DISCUSSION

**A.     Federal Tax Liens**

A federal tax lien sometimes is referred to as a "secret lien," because it arises by operation of law "if any person liable to pay any tax neglects or refuses to pay the same after demand." 26 U.S.C. § 6321; *Pansier v. United States*, 225 B.R. 657, 661 n.3 (E.D. Wis. 1998). The lien imposed by section 6321 arises at the time the assessment is made, in the amount of the unpaid liability (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition

thereto), and attaches to "all property and rights to property, whether real or personal," belonging to the taxpayer. 26 U.S.C. §§ 6321–22. The lien continues until the underlying tax liability is satisfied or becomes unenforceable by the lapse of time. 26 U.S.C. § 6322.

Although a federal tax lien is perfected and enforceable against the taxpayer regardless of whether a notice of the lien has been filed, *see, e.g., In re Berg*, 188 B.R. 615, 618 (9th Cir. BAP 1995), *aff'd*, 121 F.3d 535 (9th Cir. 1997), to be effective against certain third parties, notice of the lien must be filed in accordance with 26 U.S.C. § 6323. An unrecorded federal tax lien is not valid "as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor." 26 U.S.C. § 6323(a).

Recorded or not, however, a federal tax lien generally survives a bankruptcy discharge. "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *see also In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990); *Pansier v. United States*, 225 B.R. 657, 661 (E.D. Wis. 1998) ("IRS liens pass through bankruptcy unaffected as to property or rights to property attached *prior* to the petition's filing. . . . In other words, while tax liens securing dischargeable debts do not attach to property acquired post-petition, bankruptcy does not change their effectiveness regarding property interests a debtor held pre-petition.").

### B. Relief from Stay

Section 362(d) of the Bankruptcy Code provides that the court *shall* grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest," § 362(d)(1), or, with respect to a stay of an act against property, if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization," § 362(d)(2). The party requesting relief from stay has the

burden of proof on the issue of the debtor's equity in property, while the debtor bears the burden of proof on all other issues. 11 U.S.C. § 362(g).

The United States leads with its argument under subsection (d)(2): that relief must be granted because the debtor lacks equity in the property (all three properties), which is not necessary to an effective reorganization. "A debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the property exceed the value of the property." *In re Stincic*, 559 B.R. 890, 898 (Bankr. W.D. Wis. 2016) (quoting 3 *Collier's on Bankruptcy* ¶ 362.07[4][a]) (internal quotation marks omitted). The United States alleges, and the debtor's schedules attest, that the encumbrances against the three properties exceed their value. The debtor does not contend, in his response brief or elsewhere, that he has equity in any of the properties. The first prong of subsection (d)(2) is met.

As to the second prong, necessity for an effective reorganization, the United States asserts that this factor is inapplicable in this chapter 7 liquidation. *See Matter of Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990) ("Because this is a liquidation under Chapter 7, there will be no reorganization. The only question faced by the bankruptcy court, then, was whether the debtor had equity in the property."). Mr. Gorokhovsky's response brief skirts this argument altogether, focusing wholly on the United States' second argument that "cause" for relief exists under section 362(d)(1).

Based on the evidence in the record, the court concludes that there is no equity in the three properties and they are not necessary to an effective reorganization, so the United States is entitled to relief from the stay under section 362(d)(2).

The United States also argues that relief should be granted under section 362(d)(1) for cause, because the United States' interests are not adequately protected and the government would be harmed by maintaining the stay. Section 362(d)(1) identifies only one example of cause: lack of adequate protection. Otherwise, "'[c]ause' as used in § 362(d) has no clear definition and is determined on a case-by-case basis." *Matter of Fernstrom Storage & Van Co.*,

938 F.2d 731, 735 (7th Cir. 1991) (internal quotation marks omitted).  In determining whether cause exists under section 362(d)(1), the court may consider factors including "interference with the bankruptcy, good or bad faith of the debtor,[5] injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *In re Milne*, 185 B.R. 280, 283 (N.D. Ill. 1995).[6]

After considering the relevant circumstances, the court concludes that there is cause to grant the United States relief from the stay.  Lifting the stay will not interfere with the bankruptcy case.  The chapter 7 trustee has abandoned the properties at issue, so they are no longer part of the bankruptcy estate and will not be liquidated for the benefit of unsecured creditors.  As the United States observes in its motion, the purpose of the automatic stay is to "preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors." *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982).  Because the assets at issue have been abandoned—and because this is a no-asset chapter 7 case—this rationale for

---

[5]  The United States argues that the debtor has exercised bad faith as to his creditors by holding the three real properties in the name of nominees, which thwarts collection efforts.  The court makes no finding as to the debtor's good or bad faith.  The court notes, however, that one of the reasons the trustee found the properties to be burdensome or of inconsequential value to the estate is that the properties are not titled in the debtor's name.

[6]  In his response brief, the debtor identifies the following three-factor test as the relevant inquiry for the court in determining whether the stay should be lifted: "(1) the likely harm or prejudice to the debtor and the estate that will result if the stay is modified to permit litigation against the debtor in another court, (2) whether maintaining the stay will result in hardship to the movant that 'considerably outweighs' the hardship to the debtor if the stay were modified, and (3) whether the movant is likely to succeed on the merits if the stay is lifted." CM-ECF, Doc. No. 43, at 4 (citing *In re Spansion, Inc.*, 418 B.R. 84, 97 (Bankr. D. Del. 2009)).  This test is not entirely suitable for the situation at hand.  Courts usually look to these factors when considering whether there is cause to lift the stay of section 362(a)(1) to allow an unsecured creditor to continue with pending litigation against the debtor in another forum.  *See, e.g.*, *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (considering similar factors in determining whether to grant relief from stay to allow an unsecured creditor to proceed with a civil action against the debtor).  Here, the United States' primary purpose in seeking stay relief is to perfect a lien against property of the debtor, which is prohibited by section 362(a)(5), unless cause is shown.

the stay no longer applies. The debtor's response brief fails to appreciate that there will be no distribution to unsecured creditors in this case. Many of his arguments lose their force for that reason. *See, e.g.*, CM-ECF, Doc. No. 43, at 7 (describing the need for "cost-effective and efficient resolution and allowance of claims"); *id.* ("The automatic stay supports the equality of distribution among similarly situated creditors . . . ."). The debtor suggests that granting the motion will "interfere" with the administration of his bankruptcy by distracting him from pursuing his related adversary proceeding (*see id.*, at 7, n.11), but that type of alleged interference is not the focus of the court's inquiry.

The debtor also will not be harmed by granting the United States relief from the stay. As noted above, the debtor lacks equity in the properties. And contrary to the debtor's assertions, granting the United States' motion will not "negate" his pending adversary proceeding. The debtor's adversary complaint seeks an order declaring the IRS debts dischargeable. Even if he were to succeed, a discharge of those debts would affect only the debtor's personal liability; the IRS's statutory liens and *in rem* rights would survive the discharge. *See, e.g., In re Isom*, 901 F.2d at 745 ("The liability for the amount assessed remains legally enforceable even where the underlying tax debt is discharged in the bankruptcy proceeding. A discharge in bankruptcy prevents the I.R.S. from taking any action to collect the debt as a personal liability of the debtor."); *Pansier v. United States*, 225 B.R. at 66.[7]

Additionally, granting the United States relief from the stay will not harm other secured creditors. In fact, it may provide a benefit. If the United States initiates an action to enforce its liens under 26 U.S.C. § 7403, it must name all other parties who may claim an interest in the properties, and those parties will be entitled to receive the proceeds from any liquidation of the properties, in

---

[7] To the extent the debtor is seeking an order requiring the IRS to release its tax liens, or other injunctive relief barring the IRS from enforcing valid tax liens (see Adv. No. 17-02376-beh, CM-ECF, Doc. No. 1, at 4, requesting "discharge of any and all tax liens"), the court doubts it has jurisdiction to issue such an order. The Anti–Injunction Act, 26 U.S.C. § 7421(a), provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."

accordance with their lien priority.  Such protection is not guaranteed in this bankruptcy, now that the properties have been abandoned and have reverted to the debtor.  Although the debtor argues that granting stay relief will prejudice other creditors, this argument again misapprehends the nature of this proceeding.  In a no-asset chapter 7 case, there will be no distribution to creditors or a "claims allowance" process, as the debtor suggests.  *See, e.g.*, CM-ECF, Doc. No. 43, at 3, 8 ("If the Court were to lift the stay for the Movant, the Court could open the proverbial floodgates to numerous litigations before the Debtor is able to fully develop its claims adjudication and reconciliation process and that would result in further depletion of the property of Debtor . . . .").

Finally, the harm that the United States will suffer outweighs any harm to the debtor in this case.  If the United States is not able to file notices of its tax liens to perfect its interests as to third parties, the debtor will be able to transfer or further encumber the properties, in prejudice to the government's interests.  The debtor overlooks or ignores this potential harm to the United States, arguing only that the United States cannot show prejudice because it should have filed notices of its liens earlier.[8,9]  Weighing all the relevant circumstances, the court finds that there is cause to lift the stay under section 362(d)(1).

## CONCLUSION

For the foregoing reasons, and consistent with the court's March 14, 2018 ruling, the United States has met its burden in proving that it is entitled to relief from the automatic stay, under 11 U.S.C. §§ 362(d)(1) and (d)(2).

---

[8] The debtor claims that the IRS "has had almost 12 years to file its tax liens but failed to do so," but that is incorrect.  CM-ECF, Doc. No. 43, at 6.  The earliest date of assessment for the relevant tax years was November 28, 2011, *see* CM-ECF, Doc. No. 33-1, at 5.  The debtor's tax liability for 2014 was not assessed until March 6, 2017.  *Id.* at 3.

[9] The debtor's opposition brief also includes an argument about a pre-petition claim related to an alleged wrongful termination.  *See* CM-ECF, Doc. No. 43, at 4–6, & n.6.  That argument is untethered to any facts in the debtor's schedules and appears to be a remnant of a "cut and paste" from another brief.  The court does not consider it.

The court has entered a separate order consistent with this decision.

Dated: March 19, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge